WARNER, C.J.
The appellant, Christian Jacob, brought a shareholder derivative suit against appel-lees, James Barnatek, Henry Starr, and Accessories Worldwide, Inc., for an accounting and for statutory violations. In response, the appellees filed a motion for summary judgment contending that appellant was not a shareholder because his stock had been canceled for non-payment of the issuance price. The trial court agreed and entered summary judgment. We reverse, because there are material issues of fact regarding the consideration for the stock and its manner of cancellation.
Jacob, who had been involved in the business of selling plastic truck bedliners for several years, was invited by Bernatek to participate in Dytek Plastics, Inc., a company that manufactured plastic truck bedliners. Jacob accepted the offer and became a shareholder of Dytek, paying approximately $100,000 into the company from February 1995 to July 1996. In May of' 1996, AutoNation USA approached Dy-tek to discuss the possibility of allowing Dytek to become its exclusive supplier of plastic truck bedliners. As a result, Starr was brought into the business negotiations, and Jacob, Bernatek, and Starr began assembling facilities and contacting suppliers in anticipation of the deal with AutoNation.
The three individuals contemplated the formation of a separate corporation to handle the AutoNation USA account. As a result, Accessories Worldwide, Inc. (“AWI”) was formed in July 1996. Jacob was made executive vice-president of international sales of AWI. AWI conducted business from Dytek’s facilities with the use' of Dytek’s equipment. According to Jacob’s affidavit, Bernatek told Jacob that the money Jacob had paid into Dytek, AWI’s use of Dytek’s assets, and Jacob’s other services rendered in- acquiring the AutoNation USA account were sufficient consideration for Jacob’s receipt of 25% ownership in AWI.
When Jacob saw the minutes of the first meeting of the incorporators, it stated “[o]n motion duly made, seconded and unanimously carried, it was RESOLVED that 2500 shares of the capital stock of the corporation be sold to Christian Jacob for $10,000.00 and that the secretary be directed to issue this stock.” Jacob questioned Bernatek about this amount, and Bernatek assured him that this figure was “simply an approximation of the value of the shares being received by Jacob.” Jacob accepted this explanation, and the stock was issued to him on July 26, 1996, with no payment being made. On August 6, 1996, Jacob deposited $2,000 into AWI’s account for AWI’s business purposes, and he incurred an additional $4,000 in personal expenses in furtherance of AWI’s business. Unfortunately, relations between the three shareholders quickly soured and Jacob left the corporation, prompting this suit about a year later.
*876 According to Bernatek’s affidavit, Ber-natek and Starr were the only two shareholders of AWI. Jacob agreed to pay $10,000 in exchange for 25% ownership interest in the company, but that amount was never received. Bernatek states that he “inadvertently allowed Jacob to take the stock certificate without payment.” On December 19, 1996, Bernatek and Starr met and canceled Jacob’s stock certificate as null and void based on Jacob’s failure to pay the $10,000.
The trial court granted summary judgment on the ground that Jacob lacked standing to bring a derivative suit since he was not a shareholder. The court determined that AWI provided Jacob with an opportunity to purchase 2,500 shares in consideration for $10,000, which Jacob did not pay. The stock certificate was “prematurely issued” without receipt of the $10,000 called for in the minutes, and therefore the corporation canceled the stock certificate “as authorized by law.” The court cited to sections 607.0620 and 607.0621, Florida Statutes (1997), as supporting authority.
Jacob argues on appeal that the trial court erred in granting summary judgment because: (1) AWI was not entitled to rescind the stock certificate issued to him based on the statutes relied on by the court; and (2) genuine issues of material fact remain to be litigated with regard to the nature of the agreement between the parties regarding the issuance of the stock certificate. We agree on both points.
In granting summary judgment, the trial court relied on both sections 607.0620 and 607.0621 as authorizing the cancellation of the stock certificate. Section 607.0620 regulates subscriptions for shares in a corporation. However, that section does not apply because no subscription agreement exists, as appellee agrees. Section 607.0620(2) provides that “[a] subscription for shares ... is not enforceable unless in writing and signed by the subscriber.” (Emphasis added). Therefore, because no subscription agreement signed by the subscriber existed, the trial court improperly relied on section 607.0620(2) as controlling authority.
Reliance on section 607.0621 was also misplaced. That statute provides for the issuance of shares of stock by the corporation:
(1) The powers granted in this section to the board of directors may be reserved to the shareholders by the articles of incorporation.
(2) The board of directors may authorize shares to be issued for consideration consisting of any tangible or intangible property or benefit to the corporation, including cash, promissory notes, services performed, promises to perform services evidenced by a written contract, or other securities of the corporation.
(3) Before the corporation issues shares, the board of directors must determine that the consideration received or to be received for shares to be issued is adequate. That determination by the board of directors is conclusive insofar as the adequacy of consideration for the issuance of shares relates to whether the shares are validly issued, fully paid, and nonassessable. When it cannot be determined that outstanding shares are fully paid and nonassessable, there shall be a conclusive presumption that such shares are fully paid and nonassessable if the board of directors makes a good faith determination that there is no substantial evidence that the full consideration for such shares has not been paid.
(4) When the corporation receives the consideration for which the board of directors authorized the issuance of shares, the shares issued therefor are fully paid and nonassessable. Consideration in the form of a promise to pay money or a promise to perform services is received by the corporation at the time of the making of the promise, unless the agreement specifically provides otherwise.
(5) The corporation may place in escrow shares issued for a contract for future services or benefits or a promis *877 sory note, or make other arrangements to restrict the transfer of the shares, and may credit distributions in respect of the shares against their purchase price, until the services are performed, the note is paid, or the benefits received. If the services are not performed, the shares escrowed or restricted and the distributions credited may be canceled in whole or part.
§ 607.0621, Fla. Stat. (1997).
While section 607.0621(3) requires the board to determine that the consideration received or to be received is adequate before issuance of the shares, this section does not include remedies when the consideration is determined not to be adequate after the shares are already issued. Section 607.0622(1) addresses that issue directly:
[a] holder of, or subscriber to, shares of a corporation shall be under no obligation to the corporation or its creditors with respect to such shares other than the obligation to pay to the corporation the full consideration for which such shares were issued or to be issued. Such an obligation may be enforced by the corporation and its successors or assigns; by a shareholder suing derivatively on behalf of the corporation; by a receiver, liquidator, or trustee’ in bankruptcy of the corporation; or by another person having the legal right to marshal the assets of such corporation.
The obligation to pay may be enforced by the corporation against the stockholder, although equitable remedies may also be available, such as cancellation or rescission. See Pershing Indus., Inc. v. Shupnick, 325 So.2d 410, 411 (Fla. 3d DCA 1976). However, we can find no authority for a unilateral cancellation of certificates already issued as a kind of self-help remedy, where such relief is not specifically authorized by the articles of incorporation or the contract for the purchase of the stock. There is no statutory authorization which would give the board of directors this power over issued shares, nor have we been pointed to any provision of the articles of incorporation including such power.
Section 607.0621(5) does provide for the corporation to escrow shares where payment has not been received in full. When payment is not made, the shares may then be canceled. In the instant case, however, the shares were not placed in escrow or restricted in any way.
In order to obtain an equitable remedy, the corporation must seek the assistance of the equitable powers of the courts. This has not been done in this case. Thus, the court erred in granting summary judgment on the grounds that the certificates had been canceled as authorized by law.
There also remain material issues of fact as to the nature of the agreement made to pay for the stock and the adequacy of the consideration paid. While the minutes require the payment of $10,000, they do not indicate how the $10,000 is to be paid. Jacob’s affidavit indicates that the $10,000 price for the stock was the value of services performed by Jacob and AWI’s use of capital purchased in part by Jacob. Although Bernatek’s version of the agreement is different, he sent a letter to Jacob in December 1996 saying in part that “because you have defaulted in your capital infusion, be advised that your Certificate Number 3 has been legally canceled.” Calling Jacob’s failure to pay a “default” on capital infusion raises the question by itself of whether the stock was issued in consideration of a promise to pay the $10,000, instead of immediate payment. Finally, Jacob states that he made a contribution of at least $2,000 in cash to the corporation. If that is true, then, partial payment was made for the stock and raises a material issue as to the extent of the right to cancel the stock.
For all of the foregoing reasons, we reverse and remand for further proceedings.
GUNTHER and STEVENSON, JJ., concur.